UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN PAUL TERREBONNE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-02050** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "KWR"** |

## ORDER AND REASONS

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("The Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied the request of Plaintiff, Paul Terrebonne, ("Terrebonne"), for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.  The Parties consented to proceed before the undersigned on March 5, 2021. R. Doc. 21.

### I.  Background

Terrebonne is a fifty eight year (advanced age category)[1] old male who filed for disability and Social Security Income as of February 7, 2018 as a result of a right ankle problem, broken bones in his right leg, a back problem, gout, and high cholesterol. R. Doc. 26-3, Tr. 63-64.  He completed two years of college and reported past work as a flooring specialist/estimator and an Uber driver.  R. Doc. 26-2.  All claims were initially denied on June 27, 2018.  R. Doc. 26-1, Tr. 1.

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.00 (d).

Terrebonne filed a written request for hearing on October 12, 2018.  R. Doc. 26-4, Tr. 95-96.  Jeffery D. Morgan, the Administrative Law Judge ("ALJ"), held a hearing on August 6, 2019 and issued an opinion on May 12, 2020. R. Doc. 26-2, Tr. 7-26.  At the administrative hearing, Terrebonne testified that he can only sit comfortably for 45 minutes at a time.  R. Doc. 26-2, T. 51. He further testified that he can only remain standing with a cane for up to 45 minutes at a time and up to 30 minutes without one.  *Id*. at T. 52.  He testified that he could walk for approximately 45 to 60 minutes with a cane; without it, he can only walk for about 30 minutes. *Id*.

The ALJ denied Terrebonne's claim on October 24, 2019 finding he was not disabled under the meaning of the Social Security Act ("SSA"), his request for review of the decision was denied on May 12, 2020.  R. Doc. 26-2, Tr. 1-7.   In his decision, the ALJ analyzed Terrebonne's claims pursuant to the five-step[2] evaluation process used to determine whether a claimant is disabled.  Using this process, the ALJ found that Terrebonne met the insured status requirements of the SSA through December 31, 2020, and that he did not engage in substantial gainful activity since October 29, 2017 his alleged onset date.  *Id.* at Tr. 12.

The ALJ further found that he suffered from right ankle fracture status-post open reduction internal fixation, degenerative spine disease, gout, and obesity.  *Id.* at Tr. 13.  The ALJ found that

---

[2] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 13435 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)). First, the claimant must not be presently working at any substantial gainful activity. *Id*. Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.; See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

Terrebonne does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart, P, Appendix 1.

Terrebonne filed a complaint contending that the ALJ's decision was not based upon substantial evidence and that it is contrary to law and regulation. R. Doc. 1. He alleges that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly develop the record regarding Terrebonne's right ankle impairment and residual limitations. *Id.* Specifically, Terrebonne contends that the opinion is notably limited to the June 27, 2018 conclusions of non-examining state agency medical consultant Herbert Meites, M.D. who noted that there was a need for a consultative examination. R. Doc. 29.

The Commissioner contends that the ALJ applied the correct legal standards, and substantial evidence supports his residual functional capacity determination. R. Doc. 34. Further the Commissioner contends that the ALJ's residual functional capacity determination is consistent with the evidence of record and constitutes an appropriate resolution of the conflicts in the evidence. The Commissioner further contends that it was the plaintiff's burden to submit adequate medical evidence regarding his impairments for the ALJ to use in reaching the conclusion. The Commissioner contends Terrebonne is attempting to undermine the ALJ's role as the final arbiter of this disability claim because the ALJ weighed the medical evidence in fulfilling his statutory responsibility. *Id*. at p.5. Therefore, the ALJ's decision is based upon substantial evidence. *Id.* at pp. 5-6.

**II.     Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether

the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 122681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

**III.** **Analysis**

Terrebonne alleges that the ALJ's finding that he has the residual functioning capacity to perform a range of light work is not supported by substantial evidence. R. Doc. 29. Terrebonne

contends that the ALJ "played doctor" and improperly relied on his own lay interpretation of the evidence in deriving Terrebonne's residual functional capacity. Terrebonne alleges that only the state evaluator noted that a consultative examination was needed and further the ALJ rejected the non-examining physicians' medium limitation finding. Consequently, Terrebonne contends that the ALJ failed to develop the record fully and fairly when he concluded that Terrebonne was capable of performing light work.

The Commissioner contends that the ALJ's decision regarding residual functional capacity determination is based upon substantial evidence. R. Doc. 34. The Commissioner contends that the ALJ did not rely exclusively or excessively on any one factor when he evaluated Terrebonne's residual functional capacity and symptoms. *Id*. Instead he relied upon a range of evidence of the cause of the condition, the medical and treatment records, and daily activities. *Id*.

The Commissioner places the responsibility on Terrebonne to provide the ALJ with medical evidence of his disability and suggest that he failed to present evidence that his functional limitations exceeded the limitations set forth. *Id*. The Commissioner contends that an examination at the government's expense was not warranted unless it was necessary to make a disability decision and the evidence was sufficient. *Id*.

Residual functional capacity is a medical assessment of what a claimant can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. SSR 83–10 at 7. The residual functional capacity assessment first must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b), (c), and (d) before expressing residual functional capacity in terms of

sedentary, light, medium, heavy, and very heavy exertional levels of work. SSR 96–8p at 1. Title 20 C.F.R. § 404.1545(b) includes the functions of walking, standing, sitting, pushing, pulling, lifting, carrying, and other physical functions, including manipulative or postural functions, such as reaching, handling, stooping, and crouching.

A claimant's residual functional capacity is determined by combining a medical assessment of the claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988). SSA assesses residual functional capacity based on all relevant record evidence of a claimant's ability to do work-related activities; relevant record evidence of a claimant's ability to do work-related activities includes acceptable medical sources and information about the claimant's symptoms. SSR 96–8p. Acceptable medical sources for determining residual functional capacity include, but are not limited to, medical source statements; which are opinion evidence. *Id*.

Substantial evidence must support an ALJ's determination of a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The adjudicator must make every reasonable effort to ensure that the file contains sufficient evidence to assess residual functional capacity. SSR 96–8p at 5. It is well-established that "the ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Id*. However, the absence of a medical source statement describing the types of work a claimant is capable of performing does not necessarily make the record incomplete. *Id*. Further, there is no legal requirement that a physician [must] have made the particular findings that an ALJ adopts in the course of determining an RFC. *Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir.2006);

*Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356 (3d Cir. 2011) (holding that every fact incorporated into an RFC does not have to have been found by a medical expert). An ALJ's determination of residual functional capacity must "not be based on subjective symptomatology alone, but must be based on objective evidence, including results of medically acceptable clinical tests and laboratory diagnostic techniques, which demonstrate disability as defined in the Social Security Act and Regulations." *Hollis,* 837 F.2d at 1382. If the ALJ does not satisfy his duty, his decision is not substantially justified. *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984).

Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced. *Id*. "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.' " *Id*. (citations omitted). "A mere allegation that beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Manzanov. Berryhill*, 2018 WL 1518558, (S.D. Tex. Mar. 28, 2018) (quoting *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

Turning to the evidence in this case, the record shows that the ALJ noted that Terrebonne alleged that his disability began on October 29, 2017, and was due to right ankle problem, broken right ankle and right leg, back problem, gout, and high cholesterol. R. Doc. 26-2. Tr. 16. The ALJ noted that in a function report completed in May 2018, Terrebonne maintained that he was "unable to walk normally" and that he needed a walker and crutches to get around his home, as well as that he continued to experience pain above an average level. *Id*. The ALJ further wrote that Terrebonne had alleged that his impairments affected his ability to lift, walk stand, squat, bend, reach, kneel, climb stairs, remember, complete tasks, and concentrate. *Id*. However, on the day of the hearing, Terrebonne appeared without an assistive device noting that he left it in the trunk

of his car because he was in a hurry.  In considering Listing level 1.02(A), the ALJ found that the medical evidence of record did not establish that the specific listing requirements were met.[3]

Terrebonne complains that the ALJ substituted his opinion for that of either a consultant or treating physician regarding his residual functional capacity because there is no consultant report in the record.  The record shows that after Dr. Meites' disability determination on June 27, 2018 the disability examiner noted that Terrebonne's medical source was unwilling to perform the consultative examination.  R. Doc. 26-3. Tr. 68.  Further, Terrebonne went to the emergency room on August 10, 2018 for chest pain but was released on August 11, 2018.  R. Doc. 26-4, Tr. 40.

On August 16, 2018 the disability examiner contacted Terrebonne by phone to encourage him to go to the consultative examination on that day. R. Doc. 26-6, Tr. 208. Terrebonne refused to attend the consultive examination citing chest pain as the reason he was in the bed that day.  The

---

[3] 1.02 lists major dysfunction of a joint(s) (due to any cause) which is "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02

Moreover, the Commissioner provides "what we mean by inability to ambulate effectively":

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)

disability examiner asked Terrebonne to forward reports from his doctors after he went to the ER and he refused to do so. Further, there is no record evidence that he sought medical care on August 16, 2018, the date of the disability examiners contact.

On August 30, 2018, the disability examiner submitted a request for medical advice and consulted with Dr. Meites' about the difficulty with getting Terrebonne to attend a consultative examination to get x-rays and was instructed to make one more attempt at contacting him. R. Doc. 26-12, Tr. 480. On September 5, 2018, the disability examiner made another contact attempt to no avail. *Id.* at Tr. 482.

After this encounter, the medical records have a gap from August 16, 2018 to April 19, 2019. There are no records in the file that Terrebonne either sought to reschedule a consultative examination nor forwarded a doctor's report as to his ankle limitation or other medical records indicative of increased limitation.

As in *Glass v. Colvin,* No. 14-237-E, 2015 WL 5732175 (W.D.Pa.2015), nothing in the record indicates that plaintiff or his counsel requested a new examination date. While Terrebonne told the disability examiner that he was in bed due to chest pains, according to the record he did not seek medical attention on August 16, 2018. According to the record notation, when the disability examiner requested the records from the August 10th ER visit, he indicated that he would not provide them. From that date forward, Terrebonne did not submit a report from his doctor nor is there evidence that he attempted to reschedule the consultative examination even though the SSA attempted to get one scheduled.

As in *Glass*, even in plaintiff's brief, no explanation is provided for his failure to attempt to reschedule the consultative examination or follow up with the disability examiner after the

September 5, 2018 contact attempt.  Furthermore, as in *Glass*, at no point during the administrative hearing itself (during which plaintiff was represented by, and questioned by, counsel) did plaintiff's counsel take the opportunity to explain why plaintiff had not submitted a report, comply with the consultative examination request, or attempt to contact the disability examiner to set up a consultative examination.  The record shows that the Commissioner took every reasonable effort to ensure that the file contain sufficient evidence to assess residual functional capacity, such that the absence of a consultative exam does not render the ALJ's opinion lacking in substantial evidence.

Terrebonne also contends that the ALJ's decision is flawed because he ultimately interpretated clinical findings and diagnostic imaging tests in determining the degree of physical functioning which was improper.  R. Doc. 29.  In support of his position Terrebonne relies upon *Williams v. Astrue*, 355 App'x 828, 832 (5th Cir. 2009), where the Court held that the ALJ refused to give the treating physicians limitation opinion weight.  In so doing, the Court noted that while the ALJ was entitled to not give the physicians' opinions controlling weight there was no evidence in the record to support the ALJ's finding that *Williams* could stand or walk for an eight-hour workday. The ALJ in *Williams* also failed to consider the physical therapy discharge summary which noted a standing limitation of 30 minutes.  In other words, there was evidence of record that contradicted the ALJ's finding.  There also was no failure on the part of the plaintiff to cooperate in securing a consultative exam.

Terrebonne also relied upon *Frank v. Barnhart,* 326 F.3d 618 (5th Cir. 2003) for the proposition that the ALJ improperly drew medical conclusions from some of the raw medical data without relying on some medical expert help.  However, the Court did not reach this conclusion.

Instead the court found that even if the ALJ made any error, the error would be harmless. The Court noted that the ALJ's twelve-page, single spaced opinion relies very little on his assessment of the claimant's credibility. Instead, the overwhelming factor in the decision was medical evidence from a variety of sources indicating that the claimant could indeed hold down her old job as a clerical worker, a conclusion which would have been inconceivable for the ALJ to conclude otherwise.

Finally, Terrebonne contends that it is unclear how the medical evidence supported a finding of severe right ankle impairment that warranted restrictions but did not support more than an occasional use limitation for pushing, pulling, and operating foot controls. R. Doc. 29. The Commissioner contends that the ALJ must decide based on the available evidence and that it was Terrebonne's responsibility to provide sufficient evidence .

The record shows that Terrebonne testified that he was laid up for a year. However, since then the medical evidence showed progression in the ankle healing from non-weight bearing to weight bearing as tolerated. In June 2018 he was ambulating with an assistive device which had been prescribed. The ALJ noted that in April 2018 the medical evidence showed that Terrebonne had some swelling of the soft issue in the right foot/ankle and some pain, with pitting edema but no other abnormalities. *See* R. doc. 26-2, Tr. 19; R doc. 26-11, Tr. 422.

The record shows that on June 27, 2018, Terrebonne returned for a follow-up visit without any complaints of pain in the right ankle. He was noted as ambulating without an assistive device, but he complained of constant swelling of the right foot. Rec. doc. 26-11, Tr. 433. No sign of infection was noted, and he was given compression stockings. Id. at Tr. 434. On this date x-rays of the ankle were taken, and the result indicated no change in alignment, spaces well preserved

with normal alignment but persistent mild soft tissue swelling in the distal leg and ankle. Id. Tr. 436.

Just shy of one year later, on April 24, 2019, Terrebonne returned for treatment for the removal of hardware from the right medial dorsal foot. Rec. doc. 26-12, Tr. 501. As noted by the ALJ, the patient instructions he received during the visit were that he could use a walker, crutches, cane, or no device at all to get around. Therefore, his need for an assistance device was no longer required but optional.

The ALJ found that Terrebonne had a severe right ankle impairment which warranted physical restrictions and that he could occasionally use limitation for pushing pulling, and operating foot controls. While the ALJ did not explain how he concluded that an occasional use limitation was reached, the medical records support the restriction.

For example, the medical evidence confirms that from June 2018 to April 2019, Terrebonne's need for assistive device use went from recommended to optional and there is an absence of evidence during the period between June 2018 and April 2019 of problems with ankle swelling. Further, there is no evidence in the record after April 2019 that he continued to experience swelling in his ankle.

Further, occasional use was demonstrated on the day of the administrative hearing because he appeared without any assistive device. Even if the ALJ erred, the error was harmless because Terrebonne failed to present any evidence of a further limitation. The Court notes that the RFC determination is not a medical opinion and the ALJ retains sole responsibility for determining a claimant's RFC. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The Court finds that the ALJ's decision is supported by substantial evidence.

Accordingly,

IV. **Conclusion**

**IT IS ORDERED** that the decision of the Administrative Law Judge denying Steven Paul Terrebonne Disability Insurance Benefits and Supplemental Social Security Income benefits be **AFFIRMED**.

New Orleans, Louisiana, this 15th day of February 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**